IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

J & J SPORTS PRODUCTIONS, INC., )
)
Plaintiff, )
)
v. ) Case No. 10-CV-760-GKF-TLW
)
MARIA G. RIVAS, individually and )
d/b/a EL 7 MAREZ, ISABEL ROBERTO )
RIVAS, individually and d/b/a EL 7 MAREZ, )
and EL 7 MAREZ INC., an unknown business )
entity d/b/a EL 7 MAREZ,[1] )
)
Defendants. )

**OPINION AND ORDER**

Before the court is the Motion for Summary Judgment (Damages) [Dkt. #42] filed by plaintiff J & J Sports Production, Inc. ("J & J"). Plaintiff filed this action pursuant to the Communications Act of 1934, 47 U.S.C. § 605, *et seq.,* and the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, *et seq.* It alleges defendants, who are owners and/or operators of El 7 Marez, a restaurant located in, Oklahoma, intercepted and exhibited "*The Dream Match: Oscar del la Hoya v. Manny Pacquiao Welterweight Championship Fight Program,* telecast on December 6, 2008, to which plaintiff owns exclusive nationwide distribution rights. On January 13, 2012, the court granted plaintiff's Motion for Summary Judgment [Dkt. #32] as to liability, finding defendants violated 47 U.S.C. § 605 and 47

---

[1] El 7 Marez Inc. was never served in the case.

1

U.S.C. § 553 by intercepting and exhibiting a program licensed for distribution to plaintiff without paying plaintiff the required fees.[2]

In the pending motion, plaintiff seeks maximum statutory damages of $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II) and maximum enhanced damages of $100,000.00 under 47 U.S.C. § 605(e)(3)(C)(ii). Additionally, it seeks recovery of attorney fees in the amount of $9,666.25 and costs totaling $431.00.

**Statutory and Enhanced Damages**

Under § 605(e)(3)(C)(i)(I) and (II), the aggrieved party may recover either actual damages or statutory damages in "a sum of not less than $1,000 or more than $10,000, as the court considers just," for each violation. Additionally, if the court determines a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court may increase the award of damages by up to $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii).

In support of its request for maximum statutory and enhanced damages, plaintiff has submitted the affidavit of its president, Joseph M. Gagliardi [Dkt. #43, Ex. 1].

Gagliardi stated that his company, a closed-circuit distributor of sports and entertainment programming on a basis commonly known as pay-per-view, purchased and retained the commercial exhibition licensing rights to the Fight. [*Id.*, ¶3]. Commercial establishments, such as El 7 Marez, were required to pay a different fee than those who purchased the program and displayed it in their homes. [*Id.,* ¶4]. The commercial licensing fee is calculated based on the seating capacity of the establishment; the minimum fee to broadcast the Fight, for an establishment with a capacity up to 100, was $2,200.00. [*Id.,* ¶5]. Gagliardi stated "To the best

---

[2] The evidence submitted by plaintiff established defendants placed an order for the Fight on a DISH Network residential account number, paying a fee of $54.95, but broadcast the Fight at the restaurant, without paying the commercial licensing fee of $2,200.00. [Dkt. #32].

of my knowledge our programming is not and cannot be mistakenly, innocently or accidentally intercepted." [*Id.,* ¶10]. Additionally, he stated there are various methods by which a signal pirate can unlawfully intercept and broadcast plaintiff's programming, including the fraudulent purchase of pay-per-view programming at a residential rate. [*Id.*]. He averred that "the unchecked activity of signal piracy not only has resulted in our company's loss of "several millions of dollars of sales revenue, but also has a detrimental effect upon lawful residential customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities, including the deprivation of tax revenue to the communities where our potential customers reside, and the denial of benefits such tax revenue would provide the residents of such communities." [*Id.,* ¶11]. Gagliardi stated the company believes that the persistent signal piracy results in part, "from the perceived lack of consequences (including nominal or minimal damage awards by the Courts that hear our cases)." [*Id.,* ¶12].

Defendants oppose J & J's damages request, arguing no intentional violation of the piracy statute occurred, blaming J & J and DISH Network for the mixup, and asserting they received no financial benefit from airing the Fight at the restaurant. The court has already entered summary judgment in favor of J & J on liability and will not revisit that finding.

In support of its damages claim, plaintiff cites recent decisions by courts in the Western District of Oklahoma in which maximum statutory and enhanced damages have been awarded: *J & J Sports v. Cuellar,* 5:10-CV-1162-C (W.D. Okla., Apr. 14, 2011) [Dkt. #13]; and *J & J Sports Productions, Inc. v. Crawford,* Case No. 5:11-cv-453-L (W.D. Okla. Dec. 14, 2011) [Dkt. #15].

However, in a similar case in this district, United States District Judge Claire V. Eagan declined to award maximum statutory damages or the maximum allowable enhancement. *Joe*

3

*Hand Promotions, Inc. v. John M. McLemore, et al,* 4:10-CV-772-CVE-TLW (N.D. Okla. Sept. 26, 2011) [Dkt. #28]. There, the seating capacity of the offending establishment was 70; the sublicense fee would have been $875; no cover fee was charged; and the event was broadcast on three television screens. With respect to statutory damages, Judge Eagan reasoned an award of $2,500 "compensates plaintiff for any fee that should have [been] paid by defendants to obtain a sublicense to broadcast the program and for disgorgement of any possible financial benefits derived by defendants from displaying the illegally intercepted program." [*Id.* at 3]. Judge Eagan awarded enhanced damages of $2,500, finding this amount "should be sufficient to punish defendants for their illegal conduct and deter future violations of § 605," but "not so substantial that it will likely put defendants out of business." [*Id.* at 4].

Similarly, in *Joe Hand Promotions, Inc. v. George Ducummon,* 4:11-GKF-FHM (N.D. Okla. April 23, 2012) [Dkt. #22], this court found $2,000 to be the appropriate amount for statutory damages and $2,000 to be an appropriate enhancement, where the broadcast fee for the fight was $750, no cover fee was charged, no more than five to eight patrons were in the defendant bar and there was no evidence of repeated violations by defendants.

In this case, the sublicense fee defendants should have paid to broadcast the Fight was $2,200; no cover fee was charged; there were no more than 15 patrons in the restaurant during the broadcast; and plaintiff has presented no evidence of a financial benefit to defendant, or of repeated violations by defendants. Adopting the reasoning set forth in *McLemore* and *Ducummon*, the court finds $2,500 to be the appropriate amount for statutory damages and $2,500 to be an appropriate enhancement, for a total damage award of $5,000. This amount covers the cost of the commercial license and any minor financial benefit defendants received, and serves as a deterrent to future violations without putting the restaurant out of business.

**Attorney Fees and Costs**

Plaintiff seeks attorney fees under 47 U.S.C. § 605(e)(3)(B)(iii), which provides that "[t]he court shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." *Id.* Plaintiff attached to its motion the declarations of its counsel, Joshua Cline and Thomas Riley. The declarations include itemized records evidencing the time spent and the rates charged for the prosecution of this case. Plaintiff requests attorney's fees of $5,040.00 for the Tulsa firm of Savage, O'Donnell, Affeldt, Weintraub & Johnson ("Savage, O'Donnell") and $4,626.25 for the California firm of Law Offices of Thomas P. Riley, P.C. ("Riley Firm").

The court has reviewed the declarations and the accompanying itemized time records and finds the amount sought by plaintiff for work performed by the Savage, O'Donnell firm to be reasonable, both with respect to the hourly rates sought and the time spent. However, with respect to fees charged by the Riley Firm, the court finds the $400 per hour rate charged by attorney Riley, the $300 per hour rate charged by the "research attorney," and the $100 per hour rate charged by the paralegal to be excessive. Therefore, Riley's rate is reduced to $200 per hour, the research attorney's rate to $150 per hour, and the paralegal's rate to $75 per hour, resulting in a reduction of $290 for the time charged by attorney Riley, $1,800 for the research attorney's time, and $82.50 for the paralegal's time. Additionally, the Riley Firm charged a total of $116.25 (1.55 hours x $75/hr.) for work performed by an administrative assistant. This time is not compensable. These reductions result in fees totaling $2,337.50 for the Riley firm. The combined compensable attorney fees total $7,377.50.

Plaintiff seeks taxable costs of $431.00. The court, having reviewed the declaration of costs [Dkt. #43-3], grants the requested award of costs.

**Conclusion**

Plaintiff's Motion for Summary Judgment (Damages) [Dkt. #42] is granted in part. The court awards statutory damages in the amount of $2,500.00 and enhanced damages in the amount of $2,500.00, attorney fees totaling $7,377.50, and costs of $431.00. Pursuant to Fed.R.Civ.P. 4(m), the claim against defendant El 7 Marez Inc., d/b/a El 7 Marez, is dismissed without prejudice.

ENTERED this 16th day of August, 2012.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT